UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **KEVIN TRAHAN** | * | **CIVIL ACTION NO.  15-2803** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **METROPOLITAN LIFE INSURANCE CO.** | * | **MAG. JUDGE KAREN L. HAYES** |

<u>**REPORT AND RECOMMENDATION**</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for partial summary judgment filed by Defendant Metropolitan Life Insurance Co. ("MetLife") [doc. # 9] regarding the standard of review to be applied in this ERISA case and whether ERISA preempts the state law causes of action. For reasons explained below, it is recommended that the motion for partial summary judgment [doc. # 9] be GRANTED.

<u>**Background**</u>

On November 16, 2015, Kevin Trahan filed the instant suit for damages in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana, against the issuer of his employer's group health care policy – MetLife. [doc. # 1-1, p. 5]. In January 2013, Plaintiff sustained an injury from an accident while at home. *Id.* Plaintiff contends that MetLife wrongfully denied his disability benefits under the policy provisions. *Id.* at 6. Accordingly, he seeks to recover his short term disability benefits, long term disability benefits, mental anguish damages, inconvenience, state statutory penalties, court costs, legal interest, attorney's fees and "any and all equitable relief." *Id.*

On December 9, 2015, the Court ordered the parties to file the following:

I.  Within 60 days of the date of this Order, . . . file a (1) joint stipulation, (2) statement, or (3) motion for summary judgment or other dispositive motion as to the following issues:

    a. whether ERISA governs the employee benefit plan at issue,

    b. whether the plan vests the administrator with discretionary authority to determine eligibility for benefits and/or construe and interpret the terms of the plan, and

    c. whether ERISA preempts all state law claims related to the employee benefit plan at issue . . .

(December 9, 2015, Civil Case Mgmt. Order [doc. # 2]). The parties both agree that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") governs the plans in question. [docs. # 9-2; # 17]. However, the parties were unable to agree as to whether ERISA preempted all state law claims related to the employee benefit plant at issue and whether "MetLife acted as the Plan's claim administrator and, under ERISA, is a fiduciary of the Plan with discretionary authority." [docs. # 9-2; # 17].

    Accordingly, on February 5, 2016, MetLife filed a motion for partial summary judgment seeking a determination that (1) the Plan vests the Plan Administrator and other Plan fiduciaries, including, MetLife, with discretionary authority to determine eligibility for benefits and to construe and interpret the terms of the Plans; and (2) that all of plaintiff's state law claims are preempted by ERISA. [doc. # 9-1, p. 21-22]. Plaintiff filed his opposition to the motion on April 8, 2016. [doc. # 36]. MetLife filed a reply brief on April 29, 2016. [doc. # 22]). Thus, the matter is ripe.

## Summary Judgment Principles

    Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2511 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "The court *need* consider only the cited materials, but it *may* consider other materials in the record." FED. R. CIV. P. 56(c)(3) (emphasis added). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[1] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

<u>Analysis</u>

## I.      Standard of Review of MetLife's Claim Determinations

MetLife contends that the discretionary authority granted to it in the short-term and long-term benefit plans warrants a deferential standard of review of MetLife's claim determinations. [doc. # 9-1, p. 13]. "ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.'" *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998) (citation omitted). To achieve these goals, ERISA requires every employee welfare benefit plan to,

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

---

[1] I.e., beyond doubt.

When deciding whether to pay or deny benefits, a plan administrator must make two general types of determinations: "[f]irst, [s]he must determine the facts underlying the claim for benefits. . . . Second, [s]he must then determine whether those facts constitute a claim to be honored under the *terms* of the plan." *Schadler*, 147 F.3d at 394 (citation omitted) (emphasis in original). If a plan participant has been denied benefits, then ERISA permits a claimant to bring suit in federal court "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

Under ERISA, the factual determinations made by the plan administrator or fiduciary are reviewed for abuse of discretion. *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100-101 (5th Cir. 1993) (citing *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir. 1991)). However, a plan administrator's interpretation or application of the plan is reviewed de novo "'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Aboul-Fetouh v. Employee Benefits Committee*, 245 F.3d 465, 471-472 (5th Cir. 2001) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956-57 (1989)).

The Court emphasizes that "the administrator's factual determinations are reviewed for abuse of discretion, regardless of the administrator's ultimate authority to determine benefit eligibility." *Chacko v. Sabre, Inc.*, 473 F.3d 604, 610 (5th Cir. 2006) (citations omitted). Moreover, when "a challenge to a denial of benefits . . . disputes whether an individual's conditions qualify as a disability, the inquiry involves factual determinations . . .[,]" which is subject to review for abuse of discretion. *McDonald v. Hartford Life Group Ins. Co.*, 361 Fed. Appx. 599, 607 (5th Cir. Jan. 19, 2010) (unpubl.) (citing *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 540 (5th Cir. 2010)); *see also Bellaire*

5

*General Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828 (5th Cir. 1996) (accepting Plan Administrator's concession that decisions regarding medical necessity were factual determinations); *Johnson v. Hartford Life Ins. Co.*, 2008 WL 544465, 2 (W.D. La. Feb. 27, 2008) (Hicks, J.), *affirmed*, 304 Fed. Appx. 346 (5th Cir. Jan. 5, 2009) (plan insurer's decision that plaintiff was not disabled is a factual determination) (citing *Meditrust Financial Services, Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 214 (5th Cir.1999)).

As for determinations regarding eligibility for benefits or construction of plan terms, the Fifth Circuit has emphasized that, "[d]iscretionary authority cannot be implied; an administrator has no discretion to determine eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator." *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 636 (5th Cir. 1992) (citing *Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554, 558 (5th Cir. 1990)). The courts do not require any particular "linguistic template;" rather, the plan must be read "as a whole" to determine whether it confers discretionary authority upon the plan administrator or fiduciary. *See Wildbur, supra*. Nonetheless, the plan must *expressly* and *unambiguously* confer discretionary authority upon the administrator to determine entitlement to benefits. *See Cathey*, 907 F.2d at 559.

MetLife contends that the following Plan provisions confer the it with discretionary authority to determine eligibility for benefits or to construe plan terms,

1)   "MetLife will review your claim and notify you of its decision to approve or deny your claim." [doc. # 9-3, p. 53; # 9-4, p. 57].

2)   "After MetLife receives your written request appealing the initial determination, MetLife will conduct a full and fair review of your claim. . . . MetLife will notify you of its final decision . . . ." [doc. # 9-3, p. 54; # 9-4, p. 58].

6

3)      "Prudent Actions by Plan Fiduciaries. . . . ERISA imposes duties upon the people
who are responsible for the operation of the employee benefit plan. The people
who operate your plan, called 'fiduciaries' of the Plan. . . ." [doc. # 9-3, p. 55; # 9-
4, p. 59].

4)      "Discretionary Authority of Plan Administrator and Other Plan Fiduciaries. . . .
Plan fiduciaries shall have discretionary authority to interpret the terms of Plan
and to determine eligibility for and entitlement to benefits in accordance with the
terms of the Plan." [doc. # 9-3, p. 55; # 9-4, p. 59].

Both plans unambiguously endow the Plan fiduciaries with discretionary powers to
interpret the terms of the Plans and to evaluate claims for benefits. However, Plaintiff asserts that
MetLife is not a fiduciary under the plans in question. Specifically, Plaintiff claims that "(1)
MetLife did not undertake to serve as a plan fiduciary . . . . (2) Additionally or alternatively, if
MetLife undertook to serve as a plan fiduciary, it did so illegally because of an irreconcilable
conflict of interest. . . ." [doc. # 16, p. 2].

Plaintiff argues that MetLife is not the Plan fiduciary because there are no documents
which state that MetLife was to perform any administrative function other than the payment of
claims—its inherent duty as the insurer of the Plan rather than as administrator of the Plan.
Defendants argue that the above language makes it clear that discretionary authority is given to
the insurer of the Plan, MetLife.

The existence of a fiduciary relationship under ERISA is a mixed question of law and
fact. *Kramer v. Smith Barney*, 80 F.3d 1080, 1083 n.2 (5th Cir. 1996). The term "fiduciary" is
defined in 29 U.S.C. § 1002(21)(A) to include persons who, with respect to an employee benefit
plan, "[exercise] any discretionary authority or discretionary control respecting management of

7

such plan or exercises any authority or control regarding management or disposition of its assets." ERISA § 3, 29 U.S.C. § 1002(21)(A). "Thus, a person is a fiduciary if that person has discretion in deciding whether claims are to be paid or establishes the policies and procedures to be followed in evaluating claims. Conversely, persons who provide only ministerial or actuarial services are not fiduciaries." *McManus v. Travelers Health Network of Texas*, 742 F.Supp. 377, 382 (W.D. Tex. 1990) (internal citations omitted); *see also, Timmons v. Special Ins. Services*, 984 F. Supp. 997, 1005 (E.D. Tex. 1997) ("whether an insurer is an ERISA fiduciary depends largely upon which hat the insurer wears—that of a party with some discretion over management of the Plan or that of a party with purely ministerial duties.").

The term fiduciary has been given "a liberal construction in keeping with the remedial purposes of ERISA. A person is a fiduciary only with respect to those portions of a plan over which he exercises discretionary authority or control." *American Fed'n of Unions Local 102 v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 662 (5th Cir. 1988). Consistent with the broad definitional language of "fiduciary" in 29 U.S.C. § 1002(21), an insurance company may become a fiduciary of an ERISA plan by falling within the definition of a "fiduciary" contained in § 1002(21)(A). 181 A .L.R. Fed. 269 §§ 2[a], 15 (2002). Courts in the Fifth Circuit have expressly held that an insurance company is a plan fiduciary insofar as it determines ERISA benefits claims. *See, e.g., Vega v. National Life Ins. Services, Inc.*, 145 F.3d 673 (5th Cir. 1998), *reh'g en banc granted, opinion vacated on other grounds*, 167F.3d 197 (5th Cir. 1999) *and on reh'g en banc*, 188 F.3d 287 (5th Cir. 1999); *Pierre v. Connecticut General Life Ins. Company/Life Ins. Co. of North America*, 932 F.2d 1552 (5th Cir. 1991); *American Fed'n of Unions Local 102*, 841 F.2d 658; *Timmons* 984 F. Supp. at 1005; *McManus*, 742 F. Supp. at 382 ("In claiming that Defendants unlawfully denied Plaintiffs' benefits, Plaintiffs implicitly acknowledge that

8

Defendants had the authority and discretion to determine whether Plaintiffs' claims should be paid. Plaintiffs cannot now be heard to argue that those with the authority to pay or deny their claims are not fiduciaries as defined by ERISA.").

In *Vega*, the court found that an insurance company that determined medical benefits claims under an ERISA plan was a fiduciary notwithstanding a provision in the plan summary that identified the employer as the plan administrator and stated that the insurance company was not to be deemed a named fiduciary or plan administrator. The court noted that the insurance company fell within the § 1002(21)(A) definition, since it had complete discretionary authority to decide claims, as indicated by the express terms of the plan summary, which stated that it had "complete discretion" in making determinations regarding plan coverage, payment of claims, or interpretation of the plan. *Vega*, 145 F.3d 673.

Here, Quanta, Plaintiff's employer, is the designated "Plan administrator." [doc. # 9-3, p. 52; # 9-4, p. 56]. Under "ERISA Information," the Summary Plan Description instructs that: (1) the claimant must report the claim to MetLife and "MetLife will review your claim and notify you of its decision to approve or deny your claim;" (2) MetLife has the right to end the policy; (3) MetLife conducts a full and fair review of claim appeals; (4) decisions by MetLife are final; and (5) MetLife has the right to request further information and to notify a claimant as to its claim decision. [doc. # 9-3, p. 52-54; # 9-4, p. 56-58]. Thus, under these provisions MetLife effectively has final authority to determine claims. Further, the Plan directs Plaintiff that a legal action on a claim is to be brought against MetLife. [doc. # 9-3, p. 44; # 9-4, p. 47] ("Us" is defined as MetLife under the Plan definitions). Finally, the Summary Plan Description provides that the Plan administrator and "other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility." [doc. # 9-3, p. 55; # 9-4, p. 59]. Based on the

9

foregoing, the Court finds that although Quanta, the sponsoring employer, is nominally the administrator of the Plan, discretion is in fact vested in the insurer, MetLife, and therefore, MetLife is endowed with fiduciary status under ERISA.

Plaintiff also contends that MetLife is not a fiduciary because MetLife is violating its duty of loyalty by denying benefits under the plan while also running a for-profit corporation. [doc. # 16, p. 6]. Plaintiff argues that due to the self interest in keeping profits high, MetLife's conflict of interest prevented MetLife from a fair evaluation in the process of his claims.

In *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008), the Supreme Court held that a structural conflict of interest created by the plan administrator's dual role in making benefits determinations and funding the benefit plan does not prevent it from being a fiduciary under ERISA, but should be taken into account on judicial review of a discretionary benefit determination.  The Fifth Circuit noted that "If the administrator has a conflict of interest, [the court should] weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial, meaning [the court should] take account of several different considerations of which conflict of interest is one." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009) (internal quotations omitted).

If the plan administrator has a conflict of interest (such as where the ERISA plan administrator is also a payer of benefits), the Court merely "weigh[s] the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial." *See Holland*, 576 F.3d at 247, 248 n. 3

Accordingly, in the event that any issues of plan term interpretation arise in the course of these proceedings, the court shall review the issue(s) under the abuse of discretion standard. *See Firestone Tire & Rubber Co.*, 489 U.S. at 115.

10

## II.     Plaintiff's Claims are Preempted by ERISA

There are two distinct types of preemption under ERISA: complete preemption under §

502(a) (the civil enforcement provision codified at 29 U.S.C. § 1132(a)) and conflict or express

preemption under § 514 (codified at 29 U.S.C. § 1144(a)). *See Ellis v. Liberty Life Assur. Co. of

Boston*, 394 F.3d 262, 275 n.34 (5th Cir. 2004); *Cunningham v. Petroleum Prof'l Int.*, Civ.

Action No.  04-2528, 2006 WL 1044153 (W.D. La. Apr. 19, 2006). The former supports federal

question jurisdiction, whereas the latter does not. *Vega v. National Life Ins. Services, Inc.*, 188

F.3d 287, 291 (5th Cir. 1999) (*en banc*).

Complete preemption occurs when a federal statute wholly displaces a state law cause of

action, and in effect, converts or recasts the state law claim into a federal cause of action.

*Metropolitan Life Insurance Company v. Taylor,* 481 U.S. 58, 62-66, 107 S. Ct. 1542 (1987);

*Aetna Health, Inc., v. Davila,* 542 U.S. 200, 207-211, 124 S. Ct. 2488 (2004). ERISA's civil

enforcement provision is a statute with such preclusive force for any cause of action that falls

within its "scope." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (*en banc*).

A cause of action falls "within the scope" of ERISA's civil enforcement provision when the

plaintiff *could* have brought his claim under ERISA § 502(a)(1)(B), *and* where there is no other

independent legal duty implicated by the defendant's actions. *Davila*, 542 U.S. at 210, 124 S. Ct.

2488. In making this determination, the court must examine the plaintiff's petition, the statute

upon which his claims are based, and the various plan documents.  *Id.*

The court discerns from plaintiff's petition state law claims for recovery of health benefits

purportedly due under a group health plan and statutory penalties and fees for failure to timely

pay the foregoing benefits.[2]

Plaintiff does not explain the statutory or codal authority for his claim to recover unpaid benefits. The omission, however, is of no moment, because whether the claim derives from § 22:1821, Civil Code Article 1994 for breach of contract, or some other source, the end result is still the same. It is manifest that Plaintiff could have brought his claim for failure to pay healthcare benefits under ERISA § 502(a)(1)(B).[3]  Furthermore, MetLife's duty to pay benefits does not arise independently of ERISA or the plan terms. Indeed, there is no indication that § 22:1821 or Article 1994 impose any liability upon MetLife so long as MetLife acted in compliance with Plan terms. Thus, consideration and interpretation of plan terms is necessary for a claim for denial of benefits under these state law provisions. As plaintiff's state law claim for denial of benefits is not entirely independent of the federally regulated contract, it necessarily falls within the scope of ERISA § 502(a)(1)(B) and is thereby completely preempted. *Davila, supra*.

In contrast to § 22:1821, ERISA's § 502(a)(1)(B) does not authorize penalties for the unreasonable failure to timely pay benefits. Accordingly, the court will analyze this claim and plaintiff's claim for detrimental reliance under principles of ordinary or express preemption.

---

[2] Although Plaintiff does not state under which specific state statutory provision he seeks penalties and fees, the court will analyze the claim under from Louisiana Revised Statute § 22:1821.

[3] ERISA § 502(a)(1)(B) provides that "[a] civil action may be brought — (1) by a participant or beneficiary — . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As the Supreme Court explained, "[t]his provision is relatively straightforward.  If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496.

ERISA's express preemption provision, § 514(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan. . . ." 29 U.S.C. § 1144(a) (emphasis added). This provision is purposefully expansive, and is intended to "ensure that employee benefit plan regulation would be exclusively a federal concern." *Davila*, 542 U.S. at 208, 124 S. Ct. at 2495. Thus, any state-law cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila, supra*.

The courts apply a two-prong test to determine whether a state law "relates to" an employee health benefit plan for purposes of ERISA preemption:  "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *King v. Bluecross Blueshield of Alabama*, 439 F. App'x 386, 389 (5th Cir. 2011) (citing *inter alia Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006). Because ERISA preemption is an affirmative defense, defendants bear the burden of proof on both elements. *Bank Of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (citations omitted).

It is manifest that plaintiff's claims are conflict-preempted by ERISA. Courts consistently have recognized that ERISA preempts a claim for unpaid benefits, penalties, and fees under Louisiana Revised Statute § 22:657 (now § 22:1821).[4] *Ponstein v. HMO Louisiana*

---

[4] Effective January 1, 2009, the Louisiana Legislature amended and reenacted Title 22 of the Louisiana Revised Statutes to re-designate then-existing provisions of Title 22 into a new

*Inc.*, Civ. Action No. 08-663, 2009 WL 1309737 (E.D. La. May 11, 2009) (and cases cited

therein). Indeed, a  § 22:657/1821 claim centers upon whether plaintiff had a right to receive

benefits under the terms of an ERISA plan, which affects the relationship between traditional

ERISA entities. In fact, by its own terms, § 22:1821 defers to ERISA plans: "[t]he provisions of

this Paragraph shall not apply to medical benefit plans that are established under and regulated by

the Employment Retirement Income Security Act of 1974." La. R.S. § 22:1821(f).

     Plaintiff does not seriously contest the foregoing analysis. Instead, he contends that his

claim(s) fall under ERISA's "savings clause," which provides that "[e]xcept as provided in

subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person

from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. §

1144(b)(2)(A).[5]  For a state law to be considered a law that regulates insurance under the savings

clause, it must meet two requirements: 1) "the state law must be specifically directed toward

entities engaged in insurance;" and 2) "the state law must substantially affect the risk pooling

arrangement between the insurer and the insured." *Garcia v. Best Buy Stores, L.P.*, 416 F. App'x

384, 386 (5th Cir. 2011) (*citing* Ky. *Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 341–342,

123 S. Ct. 1471 (2003)).

     To affect the risk-pooling arrangement, a "statute must alter the scope of permissible

bargains between insurers and insureds and thus substantially affect the risk-pooling

---

format and number scheme *without changing the substance of the provisions*.  (Acts 2008, No.
415, § 1).

   [5] Subparagraph (B) (a/k/a/ the "deemer clause") restricts the savings clause by exempting
employee benefit plans from state regulation as insurance companies. *Custom Rail Employer
Welfare Trust Fund v. Geeslin*, 491 F.3d 233, 235 (5th Cir. 2007) (citing *inter alia*, 29 U.S.C. §
1144(b)(2)(B)).

arrangements that insurers may offer." *Ellis*, 394 F.3d at 277-78 (citations and internal quotation marks omitted). Statutes that are remedial in nature, i.e. that provide remedies "to which the insured may turn when injured by the bad faith of the insurer," do not affect the bargain that an insurer makes with its insured, and therefore, do not affect the "risk" contracted for by the insurer. *Ellis, supra*.

Here, § 22:1821 authorizes recovery of benefits due under the policy, plus penalties and fees for an insurer's unreasonable failure to timely pay benefits. La. R.S. § 22:1821. As such, it is remedial in nature and does not affect the risk (a participant's health care costs) contracted for under the policy. *See Ellis, supra*; *Letter v. Unumprovident Corp.*, Civ. Action No. 02-2694, 2003 WL 22077803 (E.D. La. Sept. 5, 2003) (§ 22:657 does not substantially affect the risk pooling arrangement between insurer and insured). Having failed at least one component of the *Miller* test, the court necessarily finds that § 22:1821 does not fall within ERISA's savings clause. *Tingle v. Pac. Mut. Ins. Co.*, 996 F.2d 105, 108 (5th Cir. 1993) (applying the old three part *Metropolitan Life* test). Thus, plaintiff's § 22:1821 claim for penalties is also preempted by ERISA.

## Conclusion

Pursuant to the parties' agreement on uncontested facts, the court finds that the subject plan is an ERISA plan. [*See* doc. # 17]. In the event any issues of plan term interpretation arise in the course of Plaintiff's claim for wrongful denial of benefits, the court must review the issue(s) under an abuse of discretion standard. Furthermore, plaintiff's state law claim for failure to pay benefits under the plan is completely preempted by ERISA. Plaintiff's remaining state law claims for recovery of penalties and fees under § 22:1821 is conflict-preempted by ERISA. Thus, it is subject to dismissal, with prejudice, on that basis.

For the above-assigned reasons,

**IT IS RECOMMENDED** that MetLife's motion for partial summary judgment [doc. # 9] be **GRANTED**, and that judgment be entered in favor of Defendant declaring that plaintiff's state law claim for unpaid benefits under the Plan is completely preempted by ERISA, and thus, recast as a claim under ERISA § 502(a)(1)(B).

**IT IS FURTHER RECOMMENDED** that in the event any issues of plan term interpretation arise in the course of plaintiff's claim for wrongful denial of benefits, the court shall review the issue(s) under an abuse of discretion standard.

**IT IS FURTHER RECOMMENDED** that plaintiff's state law claim for penalties under Louisiana Revised Statute § 22:1821 be DISMISSED, with prejudice, as preempted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

16

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 20th day of May, 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

17