## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | | |
|---|---|---|
| **KEVIN TRAHAN** | * | **CIVIL ACTION NO.  15-2803** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **METROPOLITAN LIFE INSURANCE CO.** | * | **MAG. JUDGE KAREN L. HAYES** |

### MEMORANDUM RULING AND REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a petition for disability benefits under a welfare plan governed by the Employment Retirement Income Security Act ("ERISA"),  29 U.S.C. § 1001, *et seq.*[1] For reasons explained below, Plaintiff's motion for oral argument [Doc.#33] is **DENIED**; Defendant's motion to strike [doc.#37] is **GRANTED**; and it is recommended that the petition be **DENIED**.

### Factual and Procedural Background

Plaintiff Kevin Trahan ("Trahan") was employed by Performance Energy, LLC, ("PE") first as a welder then as a rigger/crane operator, for nearly twenty-five years. [doc. #1, Exh A, ¶¶ 2-3; doc. #31, p. 1]. In 2007, Trahan began to experience neck and back pain that became more severe with time. [doc. #31, p. 1]. In 2012, a lumbar MRI showed Trahan was suffering from severe degenerative disc disease. *Id.* In January 2013, Plaintiff accidentally fell off of steps and into a 55-gallon drum, further injuring his back. [doc. #1, Exh. A, ¶ 5]. Trahan ceased work on January 27, 2014. [doc. #31, p. 1]. On or about June 23, 2014, Trahan filed a claim for short-term

---

[1]  The parties submitted the matter for decision on the administrative record.  *See*, December, 9, 2015, Civil Case Management Order. [doc. #2].

disability benefits under one of two Employee Retirement Income Security Act ("ERISA")[2]

health and welfare benefit plans (the "Plans") that his employer maintained. [STD-AR-145-47].

The Plans were insured by insurance policies issued by Defendant Metropolitan Life Insurance

Company ("MetLife"). [doc. #9, p. 2]. As an employee of PE, Trahan was eligible for and

participated in the employee welfare benefit Plans at issue. [doc. #38, p. 2].

On September 29, 2014, MetLife denied Trahan's short-term disability claim. [STD-AR-

130]. On September 23, 2015, the determination to deny benefits was upheld on appeal. [STD-

AR-001].

On November 16, 2015, Trahan filed the instant suit for damages in the 4th Judicial

District Court for the Parish of Ouachita, Louisiana, against MetLife. [doc. #1, Exh A]. MetLife

removed the case to federal court on December 8, 2015. Trahan contends that MetLife

wrongfully denied him disability benefits, and seeks to recover short term and long term

disability benefits, mental anguish, inconvenience, state statutory penalties, court costs, legal

interest, attorney's fees and "any and all equitable relief." *Id.*

On May 20, 2016, the undersigned granted MetLife's motion for partial summary

judgment, finding that (1) plaintiff's state law claims for unpaid benefits and penalties were

preempted by ERISA; and (2) Plan interpretation issues will be reviewed under an abuse of

discretion standard. [doc. #24]. On September 7, 2016, Trahan filed his trial brief, claiming that

MetLife abused its discretion in denying Trahan's claim for disability. [doc. #31]. MetLife filed

its trial brief on October 5, 2016. [doc. #38]. Trahan filed his reply on October 19, 2016, [doc.

#40], and MetLife filed a sur-reply on November 4, 2016. [doc. #46].

Two other related motions are also pending before the Court. On October 5, 2016,

_____

[2] The parties agree that Plaintiff's claims are governed by ERISA. [docs. #9, #16].

2

MetLife filed a motion to strike medical records filed with the Court by Trahan and referenced by him in his trial brief. [doc. #37]. Trahan filed a memorandum in opposition on October 27, 2016, [doc. #41], and MetLife filed its reply on November 2, 2016. [doc. #42]. Trahan has also filed a motion for oral argument on this matter, [doc. #33], which MetLife opposes. [doc. #36].

These matters are now ripe and before the Court.

**<u>Discussion</u>**

Trahan attempts to supplement the administrative record with medical records from 2015 that were never provided to MetLife for consideration of Trahan's disability claim. MetLife filed a motion to strike these 2015 medical records and any references Plaintiff makes in his trial brief because they are not part of the administrative record. [doc. #37]. Thus, before proceeding to the merits of Trahan's claim, the Court must first determine if it will allow Trahan to supplement the administrative record with his 2015 medical records.

**I. MetLife's Motion to Strike**

On June 27, 2016, and July 12, 2016, Trahan filed exhibits with the Court containing additional medical records from 2015 that are not part of the administrative record. [docs. #27, #29].

A district court is constrained to the evidence before the plan administrator. *Vega v. Nat'l Life. Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999). A district court "is precluded from receiving evidence to resolve disputed material facts—i.e., a fact the administrator relied on to resolve the merits of the claim itself." *Id.* "Once the administrative record has been determined, the district court may not stray from it" except to "interpret[] the plan or explain[] medical terms and procedures relating to the claim," to show "how an administrator has interpreted terms of the plan in other instances," or to "assist[] the district court in understanding the medical

terminology or practice related to a claim". *Id.* "A plan participant is not entitled to a second chance to produce evidence demonstrating that coverage should be afforded." *Id.* "Thus, the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000).

It is undisputed that Trahan never submitted the 2015 medical records to MetLife for review. Plaintiff argues that he should now be able to supplement the administrative record because MetLife "close[d] its eyes to lengthy obvious gaps in the medical records," and that MetLife should have obtained the 2015 medical records from Trahan. [doc. #31, p. 14]. As Plaintiff concedes, a plan administrator has no duty to conduct an independent investigation before denying a claim. *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 511 (5th Cir. 2013); *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 331-33 (5th Cir. 2001) (finding that the district court erred in imposing a duty to investigate on the plan administrator). Thus, MetLife had no duty to obtain Trahan's medical records.

Furthermore, the Court finds that MetLife gave Trahan ample opportunity to supplement the administrative record prior to making a final decision on Trahan's claim. Trahan retained legal counsel in April 2015 while his appeal was pending. On April 22, 2015, plaintiff's counsel told MetLife to stop the appeal process so that counsel could submit additional information and review Trahan's file. [STD-AR-027]. MetLife then gave Trahan an extension of time until August 6, 2015, to submit any additional information Trahan wished to be considered for his short-term disability claim. *Id.* No new information was ever submitted. On June 24, 2015, Trahan's counsel instructed MetLife to move forward with the appeals process. [STD-AR-024].

4

Before proceeding, however, MetLife attempted to contact Trahan's attorney on August 10 and 13, 2015, leaving a voice message both times. *Id.* On August 19, 2015, MetLife again contacted Trahan's attorney via letter to inform him that MetLife had recently tried to reach him to discuss Trahan's claim. [STD-AR-023]. The letter stated that MetLife would continue with the appeal if it did not hear from Plaintiff or his counsel within 10 days, or by August 25, 2015. *Id.* Trahan's counsel never responded to MetLife's communications, and MetLife proceeded with the appeal, having never received additional medical records from 2015. *See Dix v. Blue Cross & Blue Shield Ass'n Long Term Disability Plan*, 613 Fed. App'x. 293, 296-97 (5th Cir. 2015) (denying claim where plaintiff was given more than enough time to supplement the record, including an extension from the Administrator); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) ("Assuming that both parties were given an opportunity to present facts to the administrator, [the Court's] review of factual determinations is confined to the record available to the administrator.").

Plaintiff states that he did not submit any new medical records by August 6th because there were none to submit. [doc. #40, p. 7]. Apparently, Trahan went without medical treatment between November 2014 and July 2015. *Id.* He resumed treatment on or around July 9, 2015, when he underwent a cervical and lumbar MRI which revealed that Trahan had extensive cervical disc damage including a ruptured cervical disc. [doc. #27, pp. 23-24]. On August 6, 2015, Trahan began receiving weekly lumbar epidural steroid injections. *Id.* at 2-3, 7. He then underwent double cervical fusion surgery on September 24, 2015 (one day after MetLife upheld Trahan's denial of benefits on appeal). *Id.*

While true that Trahan pursued treatment and underwent surgery on or after the August 6 submission deadline, MetLife had informed Trahan's attorney that it would not proceed with

appeal review until August 25, 2015. [STD-AR-023]. Moreover, the appeal was pending until September 23, 2015—more than a month after Trahan was recommended for surgery and began steroid injections. The Fifth Circuit in *Anderson v. Cytec Industries Inc.* contemplated a situation where a claimant may be able to supplement an administrative record on a "showing that the evidence was unavailable to them while their administrative appeal was pending or that they made a good-faith effort to discover or submit the information during the administrative process." 619 F.3d 505, 516 (5th Cir. 2010) (emphasis added). Trahan resumed treatment in July, received steroid injections in August, and his physician recommended him for neck surgery on August 15, 2015—all while the appeal was pending. [doc. #41, p. 5]. Neither Trahan nor Trahan's counsel made a good-faith effort to inform MetLife of this critical information. A review of the administrative record suggests that MetLife was wholly unaware that Trahan resumed treatment or was recommended for neck surgery. *See Richardson v. Metropolitan Life Ins. Co.*, No. 12-2802, 2014 WL 1050758, *8 (E.D. La. Mar. 14, 2014) (declining to consider late-submitted evidence that plaintiff never submitted to the administrator); *Estate of Bratton*, 215 F.3d at 520 n. 5 ("An ERISA "claimant's lawyer may add additional evidence to the administrative record simply by submitting it to the plan administrator in a manner that gives the administrator a fair opportunity to consider it."*). Trahan's argument would be more persuasive had he at least attempted to submit additional information before the appeal process was final or before filing this lawsuit. Instead, Trahan attempts to submit additional information for the Court to consider more than six months after he filed suit.

Lastly, Trahan contends that he should be able to supplement the record because he was not given the opportunity to review and rebut the final conclusions reached by MetLife's consulting physician. During the appeal process, MetLife's consulting physician provided his

initial report on March 13, 2015. [STD-AR-52]. MetLife sent this report to Dr. Graham, one of

Trahan's treating physicians, asking him to comment within fourteen days, after which MetLife

would make a final decision. [STD-AR-44-46]. The consulting physician then issued his final

report on September 17, 2015. The final report was not forwarded to Trahan, his counsel, or any

of Trahan's treating physicians for review. Trahan argues that this "change in procedure" was

unfair because counsel "could reasonably infer that MetLife intended to follow this procedure

again," giving him a chance to review the report and respond. [doc. #40, p. 8]. Thus, Trahan

claims that this "premature" and "hasty" decision "cut off claimant's window of opportunity" to

supplement the administrator with the 2015 medical records. [doc. #41, p. 6]. This argument is

meritless.

      As discussed above, Trahan was given ample opportunity to supplement the

administrative record and failed to communicate with MetLife that Trahan resumed treatment.

Furthermore, Trahan cites no authority for the proposition that MetLife was required to let him

review and rebut the final report. A similar argument was rejected in *Shedrick v. Marriott*

*International, Inc.*, 500 Fed. App'x 331, 339 (5th Cir. 2012) (explaining that "there does not

appear to be relevant case law or regulations for the position that Aetna violated ERISA's full

and fair review requirement by failing to consider evidence submitted after Shedrick's appeal

was closed or by not allowing Shedrick to rebut the [consulting physicians's] report."); *see Killen*

*v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 311 (5th Cir. 2015) (citing *Shedrick* and noting

that "Circuits . . . have generally determined that ERISA does not guarantee claimants an

opportunity to rebut an independent medical examination report generated during an appeal prior

to a denial of benefits.").

      Accordingly, the Court will not consider Trahan's 2015 medical records because they are

not part of the administrative record. "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Thus, MetLife's Motion to Strike the Medical Records under Docket Numbers 27 and 29 and References to Those Records in Support of Plaintiff's Trial Brief, [doc. #37], is **GRANTED**.

On September 7, 2016, Trahan filed a motion for oral argument in this matter. [doc. #33]. Because the review herein is limited to the administrative record, and both the record and the parties' briefs are clear, a hearing would serve no useful purpose. Thus, Trahan's motion for oral argument is **DENIED**.

## II. Standard of Review Under ERISA

"ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.'" *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998) (citation omitted).  To achieve these goals, ERISA requires every employee welfare benefit plan to,

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

When deciding whether to pay or deny benefits, a plan administrator must make two general types of determinations: "[f]irst, [s]he must determine the facts underlying the claim for benefits. . . . Second, [s]he must then determine whether those facts constitute a claim to be honored under the *terms* of the plan."  *Schadler*, 147 F.3d at 394 (citation omitted) (emphasis in

original).  If a plan participant has been denied benefits, ERISA permits a claimant to bring suit in federal court "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).

Under ERISA, the factual determinations made by the plan administrator or fiduciary are reviewed for abuse of discretion. *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100-101 (5th Cir. 1993) (citing *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir.1991)). Moreover, when an ERISA plan gives the administrator discretionary authority to construe the plan's terms and determine eligibility for benefits, the Court reviews the administrator's decision for abuse of discretion. *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010). The undersigned has already determined that any issues with MetLife's interpretation of Plan terms shall be reviewed under an abuse of discretion standard. [doc. #24].

The Court will only find an abuse of discretion "where the plan administrator acted arbitrarily or capriciously."  *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009). "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence." *Id*. Substantial evidence

> is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  An arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence.

*Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (internal quotation marks and citations omitted). "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Id*. The

Court must only ensure that the decision falls "somewhere on a continuum of reasonableness—even if on the low end." *Id.* at 247. However, the Court "owes no deference . . . to an administrator's unsupported suspicions." *Anderson*, 619 F.3d at 512.

Courts undertake a two-step process to review a plan fiduciary's interpretation of its plan:

First, a court must determine the legally correct interpretation of the plan. If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. In answering the first question, i.e., whether the administrator's interpretation of the plan was legally correct, a court must consider:

(1) whether the administrator has given the plan a uniform construction;

(2) whether the interpretation is consistent with a fair reading of the plan, and

(3) any unanticipated costs resulting from different interpretations of the plan.

*Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637-38 (5th Cir.), *as modified*, 979 F.2d. 1013 (5th Cir. 1992). "If we determine that the fiduciary's interpretation of the plan was legally correct, the inquiry is over, pretermitting any need to consider whether a legally incorrect interpretation of the fiduciary was not an abuse of discretion." *Ellis*, 394 F.3d at 270. However, if the Court determines that the administrator's decision was legally incorrect, the court must reach the ultimate question of whether the decision was arbitrary and capricious. *Wildbur*, 974 F.2d at 638.

## III. Trahan's Disability Claim

### A. The Evidence Trahan Presented to MetLife

Trahan stopped working on January 27, 2014. On or around June 23, 2014, Trahan submitted a claim for short-term disability benefits. [STD-AR-145-47]. Trahan stated that his disability began on April 28, 2014, and that he was prevented from doing his job because "My wife has been diagnosed with cancer and I can't be away from her and I would not be able to do

my job." [STD-AR-146]. MetLife informed Trahan that they needed more information to process

his disability claim including diagnosis and the date his doctors certified him as disabled,

restrictions and limitations preventing him from performing his job duties, his functional

capabilities, treatment plan, and estimated return to work date. [STD-AR-143].

During the initial review, Trahan submitted a sparse amount of medical records from

between August 2012 and November 2014. These records indicated that the basis for Trahan's

disability claim was actually that of a physical disability, not a psychiatric disability. Dr. Jerome

Gallien conducted an MRI of Trahan's lumbar spine on August 15, 2012, and diagnosed him

with degenerative disc disease. [STD-AR-141]. Around that same time, Trahan began seeking

treatment for neck and back pain at the Spine Diagnostic and Pain Treatment Center ("SDPTC")

under the care of Dr. Sean Graham. In July 2014, Dr. Graham indicated that Trahan was unable

to perform his job duties because of "uncontrollable pain," and that he was temporarily totally

disabled from working for between one and three months. [STD-AR-132-35]. Dr. Graham's

report stated that Trahan was only able to lift 10 pounds occasionally, and that he could "RTW"

(return to work) after Trahan completed the recommended treatment of lumbar epidural steroid

injections and an MRI of the cervical and lumbar spine. [STD-AR-133]. Dr. Graham excused

Trahan from work from July 10, 2014, to August 10, 2014, pending a follow up appointment to

conduct an MRI. [STD-AR-093-095]. It is undisputed that Trahan did not proceed with Dr.

Graham's recommended treatment at that time. [doc. #31, p. 9].

Even though Trahan's claim application stated that he was suffering from a psychiatric

disability, MetLife considered Trahan's back and neck injuries as a possible disability. [STD-

AR-052]. Trahan's claim was denied on September 29, 2014, because (1) there were no

restrictions and limitations or updated medical information to include clinical findings since Trahan's alleged date of disability; (2) Dr. Graham's report did not give any restrictions or limitations and it stated that Trahan's most current date of treatment was July 18, 2014; and (3) Trahan did not meet the plan's definition of disability effective April 28, 2014. [STD-AR-130-31]. MetLife contacted Dr. Graham in October and November 2014 to obtain an opinion on Trahan's condition. [STD-AR-126, 128]. Dr. Graham did not respond.

On January 2, 2015, Trahan filed an appeal. [STD-AR-119]. On January 15, 2015, MetLife again contacted Dr. Graham requesting that he provide all of Trahan's medical records from January 2014 to present. [STD-AR-114]. On February 29, 2015, Dr. Graham's office provided all of Trahan's records. The records show that Trahan presented himself a total of seven times to the SDPTC between August 2012 and November 2014 complaining of neck and back pain. [STD-AR-063]. Notes indicate that an MRI of the cervical and lumbar spine and epidural lumbar steroid injections ("ESI") were recommended, but Trahan instead managed his pain with prescription pain medication. *Id.* A note from October 30, 2013, indicates that Trahan was unable to have ESI because of his work schedule. *Id.* On July 10, 2014, another doctor's note states that Trahan had not had a cervical MRI or ESI as recommended. *Id.* On November 4, 2014, Dr. George Jibe, another physician at SDPTC, stated that Trahan's "expected return to work date is 6 months from today." [STD-AR-065]. Dr. Jibe further stated that Trahan "is unable to lift, push, or pull greater than 15 pounds. He needs to change from sitting, standing, walking every thirty minutes. FCE needed per MetLife insurance." *Id.* A note from an attending physician's assistant stated that Trahan had not received a cervical MRI "because it is expensive and he has not been able to have [ESI] because his wife has cancer" and they are living in Texas. *Id.* Finally, the

12

records included a letter to Trahan, dated November 19, 2014, discharging Trahan from Dr.

Graham's care after Trahan failed a drug test. [STD-AR-079].

    B. MetLife's Decision Affirming Denial of Benefits on Appeal

      MetLife upheld its decision denying Trahan short term disability benefits on September

23, 2015. [STD-AR-001]. MetLife affirmed its initial decision for two main reasons. First, it

found that Trahan did not comply with the treatment recommended by his treating physicians, as

required by the Plan's definition of "Disability." Second, there was insufficient medical evidence

to support Trahan's inability to perform his own job.

      On appeal, MetLife's Medical Director, Dr. Peter Lourgos, concluded that there was no

evidence of a psychiatric diagnosis preventing Trahan from completing his job duties. [STD-AR-

058-59]. Plaintiff has since agreed that there is no supporting evidence of a disabling psychiatric

condition. [doc. #40, p. 4]. MetLife also hired Dr. Malcolm McPhee to consider Trahan's back

and neck problems as a possible disability. Dr. McPhee rendered his initial report on March 13,

2015. [STD-AR-052-057]. In addition to reviewing all of Trahan's medical records, Dr. McPhee

spoke to Dr. Graham on the phone on March 12, 2015. According to Dr. McPhee, Dr. Graham

stated that he offered to provide epidural steroid and facet injections, but Trahan always had

excuses and would seek only narcotic medications. *Id.* Trahan and his attorney dispute this

characterization of Dr. Graham's statements. Dr. McPhee also concluded that Trahan would be

able to lift/carry 22-50 pounds frequently and 50 to 100 pounds occasionally, stand/walk would

be unrestricted, and squat/crotch or bend could be performed without restrictions. [STD-AR-

056]. Dr. McPhee found that the treatment Dr. Graham offered Trahan was appropriate, but that

Trahan did not follow through and was not compliant. *Id.* MetLife forwarded Dr. McPhee's

report to Dr. Graham for review and requested a response within 14 days, or by April 1, 2015. [STD-AR-046]. Dr. Graham did not respond.

At Plaintiff counsel's request, MetLife paused review of Trahan's appeal on April 22, 2015, so he could submit additional information. [STD-AR-027]. On June 24, 2015, Plaintiff's counsel instructed MetLife to move forward with the appeal. [STD-AR-024]. Plaintiff did not submit any additional information. On September 17, 2015, Dr. McPhee issued his final report with only a minor clarification, but with the same conclusions and findings. [STD-AR-007-13]. On September 23, 2015, MetLife issued its final decision upholding the denial of Trahan's short-term disability benefits.

### C. MetLife's Interpretation of the Plan was Legally Correct

"Eligibility for benefits under any ERISA plan is governed . . . by the plain meaning of the plan language." *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir.1998).

Under the terms of the short term disability plan, "disabled" or "disability" means that,

> due to Sickness or as a direct result of accidental injury:
>
> - You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
>
> - You are unable to earn:
>
>   - More than 80% of Your Predisability Earnings at Your Own Occupation from any employer.

[SPD-STD-022]. MetLife determined that Trahan was not disabled under the terms of the plan because (1) Trahan did not comply with appropriate treatment recommended by his treating physicians; and (2) there was insufficient evidence of functional limitations and restrictions to support Trahan's inability to perform his own job.

14

The parties dispute whether Trahan satisfied either criterion of the definition of disability under the Plan. The Court only discusses the first—whether Trahan was receiving appropriate care and treatment and complying with the requirements of such treatment. Trahan was treated by Dr. Graham and Dr. Jibe at the SDPTC for neck and back pain between August 2012 and November 2014. Doctors' notes from between October 5, 2012, and November 4, 2014, indicate that Dr. Graham and Dr. Jibe recommended epidural steroid injections and MRIs of Trahan's lumbar and cervical spine. [STD-AR-063]. However, it is undisputed that Trahan did not undergo the recommended treatment during that time; rather, he requested prescription medication to manage the pain. Trahan moved forward with the recommended treatment in July and August 2015 after his appeal was already pending—and nearly three years after treatment was initially recommended. MetLife was unaware that Trahan began receiving the recommended treatments in 2015. Thus, based on the information before him, Dr. McPhee determined that the treatment offered to Trahan was appropriate, but that he did not follow through and was not compliant. [STD-AR-011-12].

Trahan does not deny that he initially failed to undergo the recommended treatment, and he does not argue that the treatment recommended by his physicians was inappropriate. Rather, Trahan asserts that he could not afford the deductible payments associated with the recommended treatments because he had been off work for months. [doc. #40, p. 5]. He also states that his family moved to Houston for his wife's cancer treatment, which interfered with Trahan's ability to pursue treatment with Dr. Graham. [doc. #31, pp. 7-8].

A review of the doctor's notes from between October 5, 2012, and November 4, 2014, indicate that Trahan provided many different excuses for why he would not pursue recommended

treatment. On October 30, 2013, a note states that Trahan "was unable to have the lumbar ESI done because of his work schedule." [STD-AR-063]. On April 18, 2014, a note indicates that Trahan "should be off [work] for the next month to have the cervical MRI and procedure for the lower back," but no appointment was scheduled. *Id.* On July 10, 2014, a note states that Trahan "has not had the cervical MRI or ESI done. His wife was recently diagnosed with cancer and is seeking treatment in Houston." *Id.* Finally, on November 4, 2014, a note states that Trahan "had not had the cervical MRI done yet because it is expensive and he has not been able to have ESI because his wife has cancer and they are living in Texas." *Id.*

While the Court is very sympathetic to Trahan's family circumstances, his wife's diagnosis of cancer in January 2014 does not explain why Trahan failed to comply with recommended treatment between August 2012 and January 2014. Even after his wife's diagnosis, it does not appear that returning to Louisiana for Dr. Graham's care was all that troublesome. Indeed, a doctor's note from July 10, 2014, provides: "[Trahan] states he has moved to Houston but he would like to continue to come to this clinic." [STD-AR-063]. Had Trahan *wanted* to receive treatment closer to Houston, there is no reason to believe that he could not have done so. By the same token, Trahan continued to work until January 27, 2014. Thus, his claim that he could not afford treatment "because he had been out of work for months" does not explain why he failed to pursue the recommended treatment between August 2012 and January 2014. In sum, Trahan failed to comply with recommended treatment, with no valid excuse or justification, for many years. *See McCartha v. Nat'l City Corp.*, 419 F.3d 437, 440 (6th Cir. 2005) (holding that the claimant's excuses for missing treatment appointments could not save her disability claim). Furthermore, Trahan *did* have enough money and time to pursue the recommended treatment in

16

July and August 2015 while his appeal was pending. He fails to explain how his circumstances

changed such that he was able to undergo treatment in 2015, but not in 2012, 2013, or 2014.

In *Mack v. Metropolitan Life Insurance Co.*, 246 Fed. App'x. 594 (11th Cir. 2007), the

Eleventh Circuit addressed a disability plan, issued by MetLife, with the same "appropriate care

and treatment" requirement as Trahan's Plan. The claimant in *Mack* suffered from alcoholism,

and only followed recommended psychiatric treatment, while refusing to follow recommended

physical treatment (total abstinence from alcohol). 246 Fed. App'x. at 598. The Eleventh Circuit

affirmed the district court's denial of benefits because the claimant "did not undergo several

doctor-recommended treatments for his alcoholism." 246 Fed. App'x. at 597. Pertinently, the

Court stated,

> We do not mean to belittle Mack's problems. It may well not be easy for him to
> undergo any of the treatment suggested . . . . All the medical evidence in this case
> suggests that Mack could best service his own mental and physical health by
> following his doctor's advice. Because the evidence on that point is unanimous, any
> reasonable factfinder would have to conclude that Mack's psychiatric treatment was
> not, by itself, appropriate care and treatment within the meaning of MetLife's
> benefits plan.

*Id.* at 589-99. Similarly here, all of the medical evidence in this case suggests that Trahan should

have followed his doctors' advice. Both of his treating physician's expected Trahan to return to

work between one and six month later if he followed through with treatment. Trahan's treating

physicians and MetLife's consulting physician agree that the recommended treatment was proper.

Thus, MetLife's interpretation of the Plan that Trahan was not "receiving Appropriate

Care and Treatment and complying with the requirements of such treatment" was legally correct.

Even if the Court allowed Trahan to supplement the administrative record with his 2015 medical

records, MetLife's interpretation of the Plan would still be legally correct because Trahan would

not be disabled, as defined by the Plan, during the relevant time period. The disability application before the Court states that Trahan's disability began on April 28, 2014, and it is undisputed that Trahan was not pursuing the recommended appropriate care and treatment during that time. He did not pursue appropriate treatment until more than a year after he applied for short-term disability and the date his disability began.

Accordingly, MetLife's interpretation of the Plan was legally correct.

<u>D. Even if MetLife Incorrectly Interpreted the Plan, it Did Not Abuse its Discretion in Denying Trahan's Claim</u>

Assuming *arguendo* that MetLife's decision was legally incorrect, and this Court were required to proceed to the second step of the *Wildbur* analysis, Trahan would not be able to obtain a reversal of MetLife's coverage decision because the decision was not arbitrary and capricious.

Trahan argues that a combination of many factors in this case demonstrate that MetLife abused its discretion in denying Trahan's claim: (1) MetLife did not have an accurate job description for Trahan's position as a "rigger"—it was only provided a description for the position "crane operator"; (2) MetLife proceeded with appeal review without attempting to obtain Trahan's 2015 medical records; (3) MetLife adopted the findings of a consulting physician over the findings of two treating physicians; and (4) MetLife operated under an irreconcilable conflict of interest in its dual role as plan administrator and plan insurer. The Court will consider each argument in turn.

*1. Incomplete Job Description*

Trahan worked a dual role as a rigger/crane operator. According to Trahan's employer, a

18

crane operator

> will be working primarily outdoors in an uncontrolled climate environment. Work will be performed in all types of weather including heavy rain and below freezing temperatures with snow conditions possible. Climbing is occasionally required. The noise level of the work environment is usually high. Working hours are 12-14 hours a day, 7 days a week depending on work/job. Must have the ability to lift 75 pounds with regularity.

[STD-AR-036]. MetLife did not ask for, and Trahan's employer did not provide, an official definition of the position "rigger." According to the administrative record, Trahan described his own position as follows:

> [Employee] stated that he is a crane operator/construction worker. He builds large equipment, installs piping and welds. He stated that he is required to lift a max of 100 lbs daily, bend, push[,] pull, climb and reach. [Employee] job class is very heavy.

[STD-AR-018]. Trahan argues that the plan administrator focused solely on the *lighter* duties of Trahan's job as a crane operator and made no attempt to take into account the *heavier* duties Trahan was required to perform in his capacity as a rigger. [doc. #31, pp. 12-13].

During its initial review, MetLife correctly defined Trahan's position as "Rigger, Crane Operator," and noted that this dual position required him "to bend, reach, pull, climb and lift up to 100 lbs daily." [STD-AR-130]. However, the final decision upholding Trahan's denial of benefits on appeal noted his position as only being an "Off Shore Crane Operator". [STD-AR-002]. It is unclear exactly why the change in job description came about on appeal. Plaintiff attributes the change to a mistake made by MetLife's employee.

Nevertheless, even had Trahan's employer submitted a formal job description of the position "rigger" on appeal, MetLife's decision denying Trahan benefits would very likely not have changed. The Court agrees that the differing weight requirements between the two jobs is

19

not minuscule. A crane operator must lift 75 pounds with regularity, while, according to Trahan, a rigger may be required to lift " up to" 100 pounds on a daily basis. But after considering all of the medical evidence, Dr. McPhee concluded that reasonable restrictions and limitations would be "lift/carry 25-50 pounds frequently and 50 to 100 pounds occasionally, stand/walk would be unrestricted, squat/crouch or bend could be performed without restrictions and hand use would be unrestricted." [STD-AR-004]. Because these findings incorporate the weight requirements of both job descriptions, it is highly unlikely that MetLife's decision would have been any different, especially considering no additional, recent evidence of Trahan's functional limitations or restrictions was provided on appeal. Thus, this factor does not support a finding that MetLife abused its discretion.

### 2. Finishing Review of Trahan's Claim Without Trahan's 2015 Medical Records

As discussed *supra* in Section I, the undersigned has determined that MetLife had no duty to obtain Trahan's 2015 medical records for review. Trahan was given ample opportunity to supplement the administrative record, or, at a minimum, inform MetLife that he finally began receiving recommended treatment and request an extension to submit additional information. Thus, this factor does not support a finding of abuse of discretion.

### 3. Choosing its Consulting Physician's Findings over Trahan's Treating Physicians' Findings

Trahan argues that MetLife abused its discretion in relying on a consulting physician's opinion over the opinions of two treating physicians. He points out that the consulting physician failed to explain *why* he chose to reject the opinions of two treating physicians. [doc. #31, p. 13].

"Plan administrators are not obliged to accord special deference to the opinions of

20

treating physicians". *Black & Decker*, 538 U.S. at 825. Even if a consulting physician only reviews medical records and never physically examines the claimant, plan fiduciaries "are allowed to adopt one of two competing medical views." *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 249-50 (5th Cir. 2007). Furthermore, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker*, 538 U.S. at 834. Administrators do not bear "a heightened burden of explanation . . . when they reject a treating physician's opinion." *Id.* at 830.

MetLife's finding that Trahan could perform his own job, and thus was not disabled during the relevant time period, was supported by substantial evidence. As a Board Certified Physician in Physical Medicine and Rehabilitation, Dr. McPhee is certainly qualified to render an expert opinion on Trahan's work restrictions and limitations. Based on Trahan's medical records, Dr. McPhee concluded that Trahan's reasonable restrictions and limitations would be "lift/carry 25-50 pounds frequently and 50 to 100 pounds occasionally, stand/walk would be unrestricted, squat/crouch or bend could be performed without restrictions and hand use would be unrestricted." [STD-AR-004]. MetLife's Vocational Rehabilitation Coordinator ("VRC") also reviewed the information on file and indicated that based on Dr. McPhee's restrictions, and Trahan's job information, that Trahan would be able to perform his own job duties. [STD-AR-005]. Based on the findings of Dr. McPhee and its VRC, MetLife concluded the following:

> Although Mr. Trahan had submitted an appeal request and additional information had been received, adequate clinical rationale for functional occupational restrictions or limitations was not sufficiently demonstrated for the period in review. Although it

> was reported that Mr. Trahan was out of work due to stress and back pain, based on the information on file along with the above reviewer's reviews the information did not support the inability to perform his own occupation due to a physical or mental health condition.

*Id.*

It is undisputed that Trahan never underwent a functional capacity evaluation ("FCE"), despite MetLife's requests to do so. [STD-AR-065]. Moreover, MetLife made multiple efforts to obtain information about Trahan's functional restrictions and limitations throughout the claims process. It contacted Trahan by letter three times informing him that MetLife needed more information concerning his restrictions and limitations that prevented him from performing his job duties. [STD-AR-143; STD-AR-137; STD-AR-131]. In its letter initially denying Trahan's claim, MetLife stated the following:

> On July 11, 2014 medical was received on your claim that was dated from August 14, 2014 that showed results of an MRI of your lower back and hip and an out of work notice dated from July 10, 2014 to August 10, 2014. **There were no restrictions and limitations or updated medical information to include clinical findings since your alleged date of disability.**

[STD-AR-130] (emphasis added). On October 14, 2014, and November 3, 2014, MetLife sent a letter to Dr. Graham asking him to provide MetLife with information regarding Trahan's functional capacity and his restrictions and limitations preventing him from performing his job. [STD-AR-128]. The records provided in response did not contain any recent MRIs or other medical exams demonstrating Trahan's functional limitations. In March 2015, MetLife also asked Dr. Graham to submit his comments on Dr. McPhee's initial report, "**specifically addressing but not limited to, your patient's impairments, restrictions, and/or limitations.**" [STD-AR-046] (emphasis added). Dr. Graham did not respond.

Courts "consistently recognize that an insistence on objective evidence of restrictions and

limitations is not arbitrary and capricious." *Adams v. UNUM Life Ins. Co. of Am.*, No. Civ.A.H-04-2179, 2005 WL 2030840, \*32 (S.D. Tex. Aug. 23, 2005); *Anderson*, 619 F.3d at 517 (finding that plan administrator "was entitled to require some evidence of the functional impact of [claimant's] disability," and denying benefits in the absence of such evidence is not an abuse of discretion); *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 230-31 (5th Cir. 2004) (upholding a plan administrator's denial of claim based on lack of objective evidence); *Richardson*, 2014 WL 1050758, \*11 (holding that MetLife did not abuse its discretion in denying benefits where claimant did not provide results of an FCE or other tests that would confirm his reports of pain or otherwise support the restrictions listed by his treating doctor); *see also Schully v. Continental Cas. Co.*, 634 F.Supp. 2d 663, 682-83 (E.D. La. 2009)*, aff'd*, 380 Fed.App'x 437, 439 (5th Cir. 2010) (noting that Plaintiff submitted a "considerable amount of objective medical evidence in support of his physical disability [and] functional limitations" including multiple recent MRIs and an FCE).

In July 2014, Dr. Graham indicated that Trahan was unable to perform his job duties because of "uncontrollable pain," and that he was only able to lift 10 pounds occasionally. [STD-AR-132-35]. In November 2014, Dr. Jibe stated that Trahan was "unable to lift, push, or pull greater than 15 pounds." [STD-AR-065]. Both physicians found Trahan temporarily unable to work. However, the only objective medical finding noted by Dr. Graham to support his conclusion was the 2012 lumbar MRI or Trahan's spine. [STD-AR-084]; *see Philen v. Hartford Life & Acc. Ins. Co.*, 2013 WL 1193347, \*15 (W.D. La. Feb. 19, 2013) (upholding denial where treating physician stated that claimant was "severely disabled" but "failed to support his position with any updated objective medical evidence, and instead deferred to Plaintiff's old medical

records."). Dr. Jibe did not refer to any objective evidence to support his claim that Trahan was temporarily disabled. In fact, other than Dr. Jibe's note from November 2014, none of the doctor's notes detailing the seven visits Trahan made to the SDPTC contain any mention of functional restrictions or limitations, or any comment that Trahan could not work. [STD-AR-063].

The evidence before Dr. McPhee showed that Trahan had not received an MRI since 2012, he never underwent an FCE, and no other recent objective evidence was provided to support the conclusions of Trahan's treating physicians. As such, without recent objective evidence showing otherwise, it was not an abuse of discretion to conclude that Trahan was not disabled and could perform his job. *See Corry*, 499 F.3d at 401 (concluding that, in the absence of medical evidence establishing a disability, the administrator is vested with discretion to choose one expert over the other); *McDonald v. Hartford Life Grp Ins. Co.*, 362 Fed.App'x 599, 613 (5th Cir. 2010) (noting that Hartford had discretion in a "battle of the experts" when the record did not contain objective medical evidence of disability).

### 4. Conflict of Interest

Trahan argues that MetLife, acting as both Plan administrator and Plan insurer, acted under a conflict of interest. [doc. #31, p. 14]. "Where, as here, the employer who funds the plan also determines eligibility for benefits, a structural conflict of interest exists." *Holland*, 576 F.3d at 248. When a Court reviews the lawfulness of benefit denials, it will take account of several factors of which a conflict of interest is one. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). In other words, "conflicts are but one factor among many that a reviewing judge must take into account. *Id.* at 116. Where a plan fiduciary has a conflict of interest, the Fifth

Circuit applies a sliding scale standard of review: "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Ellis*, 394 F.3d at 270.

Overall, in light of the evidence supporting the Plan administrator's decision, MetLife's conflict of interest is not a big factor in this case. See *Holland*, 576 F.3d at 251. MetLife did not abuse its discretion in finding that Trahan was not disabled as defined by the Plan. The evidence before the Plan administrator showed that Trahan did not pursue appropriate treatment during the relevant time period, but instead managed his pain with prescription pain medication. Furthermore, without recent objective evidence supporting the conclusions made by Trahan's treating physicians, MetLife was well within its discretion in choosing its consulting physician over Trahan's treating physicians.

Accordingly, it is recommended that Trahan's claim for short-term disability benefits be DENIED.

**III. Trahan's Long-Term Disability Claim**

Trahan's petition asserts a claim for both short-term and long-term disability benefits. [doc. #1, Exh A]. However, it is undisputed that MetLife has not made a determination on whether Trahan is entitled to long-term disability benefits. [doc. #38, p. 20; doc. #40, p. 18]. Trahan asks the Court to remand the case in order to permit MetLife to consider a long-term disability claim. [doc. #40, p. 18]. MetLife asks for dismissal with prejudice of Trahan's long-term disability claim because any such claim would now be time-barred. [doc. #46, p. 8].

Exhaustion of administrative remedies is a prerequisite to an ERISA action in federal court. *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1019 (5th Cir. 2009).

25

However, when resorting to administrative remedies would be futile, a court is obliged to exercise its jurisdiction. *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 232 (5th Cir. 1997).

Dismissal without prejudice is appropriate in cases where Plaintiffs have failed to file a claim entirely with the Plan administrator. *See Harris v. Trustmark Nat. Bank*, 287 Fed. App'x. 283, 295 (5th Cir. 2008). Trahan attempts to argue that he believed a long-term disability claim was before MetLife the entire time, and that MetLife failed to inform him that there were two separate disability plans—one for long-term and one for short-term benefits. This argument is belied by the fact that Trahan's initial application is titled: "DISABILITY CLAIM FOR ACCIDENT & SICKNESS (A&S)/SHORT TERM DISABILITY (STD)/SALARY CONTINUANCE". [STD-AR-145]. MetLife certainly put Trahan on notice that it was only considering a short-term disability claim when it sent Trahan a letter two weeks after he applied for disability stating, "This letter is in regard to your Short Term Disability claim (STD)." [STD-AR-143]. Moreover, the Fifth Circuit has indicated that a plaintiff is not excused from failing to exhaust administrative remedies just because they were not informed of the proper procedures. *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir. 1990); *Bourgeois v. Pension Plan for Employees of Santa Fe Intern. Corps.*, 215 F.3d 475, 480 (5th Cir. 2000).

Accordingly, to the extent that Trahan asserts a claim for long-term disability benefits in this litigation, it is recommended that any such claim be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

## IV. Attorney's Fees

In its Answer, Defendant requests attorney's fees and costs be assessed against Trahan. [doc. #7]. ERISA provides that "the court in its discretion may allow a reasonable attorney's fee

and costs of action to either party." 29 U.S.C. § 1132(g). In deciding whether to award fees,

courts *may* consider the following five factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position.

*Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1458 (5th Cir. 1995) (citing *Iron Workers Local No.*

*272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)). In evaluating the proceedings before it, the

Court finds that an award of attorney's fees would be inappropriate. Defendants did not ask the

Court to decide any significant legal questions, have presented no evidence of Trahan's ability to

satisfy an award or bad faith on his part, and there appears no need for any deterrence of culpable

conduct. Accordingly, it is recommended that Defendant's request for attorney's fees be

DENIED.

### **Conclusion**

For the above assigned reasons,

Defendant's motion to strike [Doc.#37] is **GRANTED.**

Plaintiff's motion for oral argument [Doc.# 33] is **DENIED**.

**IT IS RECOMMENDED** that Trahan's claim for short-term disability benefits be

**DENIED and DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that to the extent Trahan asserts a claim for long-

term disability benefits, that claim be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that MetLife's request for attorney's fees and

costs be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 29th day of November 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE